## Commonwealth v. Jiminson.

Louis A. Bloom, Assistant District Attorney, for Commonwealth.

Elgin E. Weest, for defendant.

MacDade, J., Dec. 4, 1929.—This defendant, Harry Jiminson, was convicted on June 18, 1929, of failure to support a child born out of lawful wedlock, in accordance with the Acts of Assembly of the Commonwealth of Pennsylvania of July 11, 1917, P. L. 773, and of July 21, 1919, P. L. 1075, an indictment having been presented against him charging that, on Oct. 24, 1921, at the county aforesaid and within the jurisdiction of this court, with force and arms, etc., being the father of a child, Rose D. Jiminson, aged seven years, the child of May Abele (born out of lawful wedlock), and then being within the limits of the said Commonwealth of Pennsylvania, did then and there unlawfully and wilfully neglect and refuse to contribute reasonably to the support and maintenance of the said child, Rose D. Jiminson, and from the said Oct. 24th, in the year aforesaid, until the day of the finding of this indict-

ment, at the county aforesaid and within the jurisdiction of this court, unlawfully has wilfully neglected and refused to contribute reasonably to the support and maintenance of his said child, Rose D. Jiminson.

Whereupon the case having been tried before the court and jury and the defendant being found guilty, the defendant, by his counsel, E. E. Weest, Esq., moved in arrest of judgment based upon a point submitted by the defendant at the time of the trial aforesaid, requesting the court to give binding instructions to the jury to render a verdict of not guilty, which we declined, as well as a motion to set aside the verdict, copies of which motions are as follows:

"And now, June 18th, 1929, the defendant moves the Court to set aside the verdict and discharge the defendant. ·

"ELGIN E. WEEST, Attorney."

"And now, June 18th, 1929, the defendant moves the Court in arrest of judgment and sentence.

"ELGIN E. WEEST, Attorney."

Therefore, we had before us the aforesaid motions, whereupon, on Nov. 15, 1929, we made the following order:

"And now, to wit, this Fifteenth day of November, 1929, the Court having directed on November 5, 1929, that counsel for defendant file a brief of law in support of motion to set aside the verdict in above case, which said brief was to be filed in ten days, it now appearing that the transcript of testimony was not furnished counsel until this date, the time for filing said brief of law is extended for ten days from this date."

The said brief of law having been furnished by the defendant, we are now prepared to proceed to dispose of the said motions, which we are inclined to grant and discharge the defendant from custody.

The defendant, Harry Jiminson, was first arrested for desertion and non-support on a complaint of the said Mae Abele. At the hearing of the said complaint, from the testimony it appeared that the support sought by the said prosecutrix was for an illegitimate child (the paternity of which had never been proven), whereupon the court directed that the case be certified to the Court of Quarter Sessions for indictment of the defendant under the above acts of assembly for failure to support an illegitimate child. Pursuant thereto, the case was so certified and the defendant, Harry Jiminson, on June 5, 1929, was indicted for failure to support and maintain an illegitimate child, was tried and convicted on June 18, 1929, before a court (MacDade, J.) and a jury.

Pleadings in the cause were as above stated, including an exception to the ruling of the court in declining to affirm defendant's point for binding instructions.

The defendant was duly indicted, as directed by the court, under the Act of July 11, 1917, P. L. 773. Sections 1 and 2 of this act being applicable to this case, are as follows:

"Be it enacted, &c., That any parent who shall wilfully neglect or refuse to contribute reasonably to the support and maintenance of a child born out of lawful wedlock shall be guilty of a misdemeanor, and on conviction thereof shall be punished by a fine not exceeding five hundred dollars ($500.00) or imprisonment not exceeding six months, or both, with or without hard labor, in the discretion of the court.

"Proceedings under this act may be instituted upon complaint made, under oath or affirmation, by the parent of such child."

The Act of July 21, 1919, P. L. 1075, however, amends the Act of 1917, *supra*, so far as section 2 thereof is concerned, and the section now reads as follows:

"Proceedings under this act may be instituted upon complaint made, under oath or affirmation, by the parent of such child. *All prosecutions under this act must be brought within two years of the birth of the child: Provided, however, that where the reputed father shall have voluntarily contributed to the support of the child, or shall have acknowledged in writing his paternity, then a prosecution under this act may be brought at any time within two years of any such contribution or acknowledgment by the reputed father.* All acts and parts of acts inconsistent with this act are hereby repealed."

The essentialia of the case at bar make necessary a fulfilling of several requirements before a conviction can be sustained herein and must be met by the prosecution, the *first* of these being that the action must be brought within two years; and the *second* being that the prosecution not having been brought within two years under the act, *it must have been brought within two years from the time when the reputed father shall have voluntarily contributed to the support of the child or shall have acknowledged in writing his paternity.*

The defendant in this case contends that the act complained of, to wit, the birth of the child of Mae Abele, is alleged to have occurred on Oct. 24, 1921, and this action was instituted in June, 1929, or more than two years from the date of the birth of the said child. The defendant further contends that from the date of the birth of the said child until the present time he has never voluntarily contributed to the support of the child nor has he acknowledged in writing its paternity, and that, therefore, his motion in arrest of judgment and to set aside the verdict and discharge the defendant should be sustained.

The defendant in this case did not take the stand, but his position in this case is amply supported by the testimony of the prosecutrix herself.

On pages 3 and 4 of the transcript of the testimony the following questions by Louis A. Bloom, the assistant district attorney, who tried the case, and answers by Mae Abele, the prosecutrix, appear: "Q. What is the date of birth of the child? A. October 24th. Q. How old is the child? A. Seven."

Again, on page 5 of the transcript of testimony, the prosecutrix, Mae Abele, testified as follows: By Mr. Weest: "Q. How old is the child? A. It is over seven years of age; she will be eight in October."

In view of the fact that the testimony adduced at the trial on June 18, 1929, definitely established the birth of the child as having occurred on Oct. 24, 1921, there can be no question but that more than two years had elapsed since the birth of the child when the prosecution herein was commenced; therefore, under the acts of assembly above quoted, unless the prosecution can show that some time less than two years prior to the institution of the action, the alleged father, the defendant here, either voluntarily contributed to the support of the child or acknowledged his paternity in writing, a conviction under this act cannot be sustained.

To substantiate this position of the defendant, the prosecutrix herself in her testimony not only fails to establish any voluntary contributions toward the support of the child or acknowledgment in writing of the paternity by the defendant, but definitely establishes the fact that the defendant never contributed to the support of the child and never acknowledged his paternity; for instance:

The prosecutrix, Mae Abele, in response to questions of Assistant District Attorney Bloom, testified, as shown on page 3 of the transcript of testimony, as follows: "Q. Have you had any conversations with Mr. Jiminson, the

defendant in this case, since the child was born relative to support of that child? A. Yes, sir. Q. What did he say to you in those conversations? A. He told me he wouldn't give five cents to its support. I wrote him a letter. He claims he never got it, but I put a return address on the back of it and he couldn't say he never got it. As a matter of fact, he did get it. I know that he got it. I sent the letter to him and he must have got it."

And, again, on page 4: "Q. How old is the child now? A. Seven. Q. How often have you seen Harry Jiminson, the defendant in this case, since the birth of this child? A. Nearly every day. Q. What did he say to you regarding the child? A. He wouldn't keep her and don't intend to keep her. Q. Has he ever given you anything for the support of the child? A. No, sir. I had to go to Camden to have the child."

And, again, under cross-examination by Mr. Weest, the prosecutrix testified as follows (page 5 of the testimony): "Q. How old is the child? A. It is over seven years of age; she will be eight in October. Q. Mr. Jiminson has never contributed or given any money to the support of this child since it was born? A. No, sir; not 5 cents."

Again, in response to questions by the court, the prosecutrix testified as follows (page 7 of the testimony): "Q. You have nothing in writing at all excepting you say you have an insurance policy that he took out on you? A. Yes, sir. Q. But nothing for the child? A. No, sir. Q. He has not written you any letters that he is the father of the child? A. I think three or four people he has told it was his child. No, sir. Q. There is no acknowledgment from him at all? A. No, sir."

Again, in response to questions by Mr. Weest, the prosecutrix testified as follows (page 6 of the testimony): "Q. He has never contributed anything? A. No, sir. Q. Have you any acknowledgment in writing as to the father of your child? A. No, sir; but I have the insurance paper where he had them put—it was in 1923, the child was two years of age. They are insurance papers on me as his wife. Q. Insurance papers on you as his wife? A. Yes, sir. Q. If you are his wife, it is no illegitimate child. Did you marry him? A. No, sir."

And, again, in response to questions by the court, the prosecutrix testified as follows (page 9 of the transcript of testimony): "Q. This act of assembly says where the reputed father . . . ; did he give you anything? A. No, sir; no present, nothing at all."

By the Court: "That is your hard luck. You ought to be able to get a dollar. A. I asked him to buy the child a pair of stockings. No, sir, he said he would rot in jail first. Q. Have you any writing to the effect that he is the father of your child? A. Only where the child was born. Q. Have you any writing from him that he is the father of the child? A. No."

And, again, the prosecutrix called several witnesses, Henry Miller, Margaret McKnight and Emily O'Brien, none of whom testified to any contributions to the support of the child on the part of the defendant nor of any acknowledgment in writing of his paternity.

As a matter of fact, one of the witnesses of the prosecutrix, Henry Miller, testified that he had talked with the defendant the last week in April and suggested to the defendant he ought to help the prosecutrix out, to which Miller testified the defendant replied (page 12, transcript of testimony): "I wouldn't give her a cent; I wouldn't give her a cent if I had to rot in jail."

The prosecutrix, it appears from the testimony, is now married, although she is not living with her husband (page 8 of transcript of testimony).

All of the cases cited under the Act of 1917, as amended by the Act of 1919, under which this prosecution is brought, consistently hold that, since the passage of the Act of 1919, the prosecution must be brought within two years from the birth of the child, unless the reputed father has contributed to the support of the child or has acknowledged his paternity in writing. Chief among these cases are the following: Com. *v.* Abell, 75 Pa. Superior Ct. 267; Com. *v.* Morningstar, 82 Pa. Superior Ct. 425; Com. *v.* McEvans, 92 Pa. Superior Ct. 124.

And, again, there is an interesting opinion by Judge Bonniwell, reported in the case of Com. *v.* Donovan, 29 Dist. R. 46, in which case the defendant was indicted under the Act of 1917 for failure to support an illegitimate child, the child having been born Sept. 12, 1913, and prosecution begun Nov. 23, 1917, and the defendant having been found guilty, a motion for a new trial was made and the defendant in that case raised the question that the act was in direct conflict with the Act of Limitation, contending that the Act of 1917 is in direct conflict with section 77 of the Penal Code of the Act of March 31, 1860, P. L. 427, which provides: "All indictments which shall hereafter be brought or exhibited for any crime or misdemeanor . . . shall be brought or exhibited within the time and limitation hereafter expressed, and not after; . . . for all misdemeanors, perjury excepted, shall be brought or exhibited within two years next after such felony or misdemeanor shall have been committed," and is, therefore, unconstitutional. This, of course, was prior to the passage of the Act of 1919, so that after the passage of the Act of 1917 and before the passage of the Act of 1919 there was no limitation in point of time within which a prosecution of this sort might be brought, and this was recognized in the present case by the trial court, where it said (page 8 of the transcript of testimony) : "The law says you must institute a suit within two years under the Act of 1919, but prior to that it was a wide-open proposition."

His Honor, Judge Bonniwell, in Com. *v.* Donovan, 29 Dist. R. 46, recognized the same point, and in that case said:

"The wisdom of this statutory provision [Act of 1860, providing a two year limitation] is so manifest as to make argument needless. It is essential to the well-being of a community that prosecutions should not be unnecessarily delayed. Such delays do not often take place from worthy motives. Charges are often kept suspended over the head of the accused to subserve the ends of the accuser, and the end sought to be obtained by this particular act is one fraught with the utmost danger to social life and to domestic happiness. It is the experience of the courts that the defendant against whom the charge of fornication and bastardy is laid can only avoid conviction, if innocent, with the utmost difficulty. The tendency of the juries is a marked inclination to conviction in all such cases, and this condition arises not only from the sympathy which is usually felt towards the woman burdened with an illegitimate child, but also from the very nature of the charge, the manifest difficulty of disproving the allegation of the mother of the intercourse which is the basis of the crime.

"If, however, the charge is not to be brought within the statutory period of two years, but the bars are to be thrown down in this extraordinary fashion, so that, as in this case, the period of more than four years has elapsed before a prosecution was instituted, then it would naturally follow that a prosecution might be brought within the period of fifteen years and the utmost injury done to family life, as well as the greatest incentive to blackmail and extortion afforded.

"The act in question is one of those ill-considered, unbalanced legal inventions of short-sighted sociologists, who, with their minds concerned solely in the correction of isolated cases of merit that might be remedied through the means of this act, are oblivious to the disastrous consequences that its general application would cause throughout the State of Pennsylvania.

"The cunning subterfuge involved in the act, whereby the charge of intercourse is waived and the bastardy charge avoided in order to make it appear that this is a social amelioration act, illustrates only the adroitness of the prime movers in procuring the passage of so improper a piece of legislation, and does not in any way fortify its soundness.

"I am of the opinion that the act is in direct conflict with the act of limitations, and, therefore, null and void, in so far as it relates to any prosecution not commenced within the statutory period of two years from the commission of the act of intercourse that resulted in the birth of the child."

It was probably such observations as were made by the trial court (Mac-Dade, J.) in the instant case and as were made by his Honor, Judge Bonniwell, which led to the passage by the Legislature of the Act of 1919, limiting the time when prosecutions might be brought to within two years from the commission of the act. As in the present case upwards of eight years have elapsed between the birth of the child and the institution of the proceedings without voluntary contributions to the support of the child or acknowledgment in writing of the paternity of the child on the part of the reputed father in the meanwhile, and absolute refusals to contribute to the support of the child were repeatedly and consistently made by the reputed father, a conviction under these acts cannot be sustained.

### Order.

And now, Dec. 4, 1929, the above matter coming on to be heard by the court *in banc* upon a motion in arrest of judgment of the sentence upon a verdict of "Guilty," after due consideration thereof, it is ordered and decreed that the above motion of the defendant in arrest of judgment be and is hereby sustained, the verdict be and is hereby set aside, and the defendant, Harry Jiminson, be and is hereby discharged from custody.

From William R. Toal, Media, Pa.